UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA HOPSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:13-cv-01263 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MELISSA HOPSON AND AGAINST DEFENDANT CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

    Plaintiff Melissa Hopson asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the evidence. Therefore, Plaintiff seeks judicial review of the administrative decision denying benefits. Because the ALJ failed to set forth legally sufficient reasons for rejecting the credibility of Plaintiff's subjective complaints, as explained below, the action is **REMANDED** for further proceedings.

## BACKGROUND

    Plaintiff filed applications for disability insurance benefits and supplemental security income on June 16, 2010, which were denied by the Social Security Administration initially on November 15, 2010 and upon reconsideration on March 9, 2011. (Doc. 12-3 at 15.) After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on February 15, 2012. (*Id.* at 30.) The

1

ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on April 6, 2012. (*Id.* at 14-25.) The Appeals Council denied Plaintiff's request for review of the decision on June 11, 2013. (*Id.* at 2-4.) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A.     Relevant Medical Opinions**

Dr. S. K. Madireddi completed a consultative internal examination on September 29, 2010. (Doc. 10-8 at 54.) Plaintiff reported that she suffered from "[a]rthritis, fibromyalgia, anxiety, and depression." (*Id.*) In addition, Plaintiff said she had "pain all over the body" and "constant pain" in her knees and back. (*Id.*) Upon examination, Dr. Madireddi determined Plaintiff had a normal range of motion in her cervical spine and upper extremities, but she complained of "pain between the nape of the neck bilaterally and also over the lumbar area from L1-L5 bilaterally." (*Id.* at 55-56.) Plaintiff had "5/5 motor strength" in her upper and lower extremities, and no sensory deficits. (*Id.*) Dr. Madireddi noted Plaintiff's allegations of fibromyalgia could not be substantiated "because she does not have specific tender spots, only aching and pain all over the cervical, thoracic and lumbar spine and the back of both shoulders and hips." (*Id.* at 56.) Dr. Madireddi questioned the opiates prescribed, stating:

> [W]hy would an asthmatic take opiates? Surely there are other medications for fibromyalgia, such as Lyrica or Savella. Opiates are not indicated for fibromyalgia. This is a doubtful diagnosis. Opiates can cause bronchospasm, as I am sure her treating physician is aware, also constipation, gingivitis with lost teeth, urinary dysfunction, sexual dysfunction and so on. Of concern is the large quantity of opiates that she is receiving. Opiates taken for long periods of time for non-malignant pain can result in multiple medical problems . . .

(*Id.* at 57.) Dr. Madireddi concluded Plaintiff was able to sustain "at least sedentary (sitting with customary breaks for six to eight hours) level of activity for an eight hour workday, 40 hours per

week." (*Id.*)  According to Dr. Madireddi, Plaintiff could sit for a total of six hours in an eight-hour day, stand and/or walk for a total of six hours in an eight-hour day, and "lift 5 lbs. frequently and 10 lbs. infrequently." (*Id.*)

Dr. Robert Morgan completed a psychological consultative examination on October 12, 2010. (Doc. 12-8 at 58.) Dr. Morgan administered the Wechsler Intelligence Scale III, the Wchsler Memory Scale III, and the Bender Gestalt II. (*Id.*) Plaintiff reported she was suffering from depression, anxiety, and obsessive-compulsive disorder ("OCD"). (*Id.* at 59.) Plaintiff told Dr. Morgan that she "was last treated for OCD as a teenager and was even psychiatrically hospitalized presumptively for OCD." (*Id.*) Further, Plaintiff stated she was depressed because her quality of life "is not good at all," and she had pain from arthritis and fibromyalgia. (*Id.*) She reported she made "some attempt[s] to engage in domestic activities" such as "doing the dishes or a load of laundry," but then she had to rest. (*Id.* at 60.) Dr. Morgan observed that Plaintiff appeared "[m]oderately depressed," but she "put forth [her] best effort in response to psychological testing." (*Id.* at 62.) Dr. Morgan determined Plaintiff "a verbal IQ of 86, a performance IQ of 81 and a full scale IQ of 81," which were "in the low average range of intellectual functioning." (*Id.* at 63.) Similarly, Plaintiff's "general index memory score [was] in the low average classification range." (*Id.* at 64.)

Based upon the examination, Dr. Morgan opined Plaintiff had "a fair ability to maintain her concentration but a moderate ability to maintain persistence and pace;" "a fair ability to understand, carry out and remember simple one or two step instructions;" "a moderate impairment in her ability to understand, carry out and remember detailed or complex instructions;" "a fair ability to respond appropriately to coworkers, supervisors and the general public;" and "a satisfactory ability to perform work activities without special or additional supervision." (Doc. 10-8 at 65- 66.) Dr. Morgan gave Plaintiff a GAF score of 55 (*id.* at 65), indicating his belief that Plaintiff had "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.).

On November 13, 2010, Dr. Preston Davis completed a psychiatric review technique form and case assessment. (Doc. 10-8 at 82-97.) Dr. Davis noted Plaintiff's testing "showed avg performance"

and her "memory was basically adequate." (*Id.* at 96.) Based upon Dr. Davis' review of the record, he believed Plaintiff's "limits [were] more phy/med related." (*Id.*) Dr. Davis opined Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (*Id.* at 90.)

Dr. Newton completed an assessment of Plaintiff's physical residual functional capacity on November 15, 2010. (Doc. 10-8 at 98-103.) Dr. Newton believed Plaintiff was able to lift and carry 10 pounds frequently and 20 pounds frequently, sit for about 6 hours in an 8-hour workday, and stand and/or walk about 6 hours in an 8-hour workday. (*Id.* at 99.) Dr. Newton determined Plaintiff did not have any postural, manipulative, visual, or communicative limitations. (*Id.* at 100-02.) However, he found Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (*Id.* at 102.) Dr. W. Jackson affirmed this assessment on March 8, 2011. (Doc. 10-9 at 11.)

Plaintiff's treating physician, Dr. Krishnamoorthi, completed a questionnaire regarding Plaintiff's limitations and abilities on March 2, 2012. (Doc. 10-10 at 28-29.) Dr. Krishnamoorthi noted Plaintiff suffered from "fibromyalgia, chronic pain syndrome, chronic fatigue[,] anxiety, depression, chronic back pain, [and] COPD." (*Id.* at 28.) He believed Plaintiff's impairments precluded her from full-time work at any exertion level. (*Id.*) Dr. Krishnamoorthi indicated Plaintiff was able to sit 3 to 4 hours in an 8-hour day, stand/or walk 1 to 2 hours in an 8-hour day, and frequently lift 15 to 20 pounds. (*Id.* at 28-29.) Dr. Krishnamoorthi believed Plaintiff had several manipulative limitations and was limited to reaching 60% of a workday, handling items 50% of the workday, grasping 60% of the workday, and pushing and/or pulling for 40% of the workday. (*Id.* at 29.) According to Dr. Krishnamoorthi, Plaintiff had been disabled to this degree for approximately two years. (*Id.*)

**B.      Administrative Hearing Testimony**

Plaintiff testified before the ALJ at a hearing held on February 15, 2012. (Doc. 10-3 at 35.) She reported that she was thirty-one years old, and had a high school education. (*Id.*) Plaintiff said she last worked as a secretary with "general office duties" for a packaging company. (*Id.* at 35-36.) Prior to that, Plaintiff said she worked two to three hours per week as a church janitor, and worked for McDonalds for a few months. (*Id.* at 36-37.) Plaintiff said she was no longer able to work because she suffered from pain caused by fibromyalgia, depression, anxiety, and fatigue. (*Id.* at 44-45.)

She stated that she was able to take care of her personal needs and "heat something up" to eat. (Doc. 10-3 at 38-39.) Plaintiff said on a typical day, she would get up "[b]etween 5:00 and 7:00," and "rest for a while" by sitting in a recliner and watching television. (*Id*.) Plaintiff explained she would "get up for . . . a little bit at a time and do some housework," such as making the bed. (*Id.* at 39.) In addition, she would occasionally leave the house during the day to go to the pharmacy or post office with her husband or son. (*Id.*) She estimated that on average day, she spent about six hours from 9 a.m. to 5 p.m. either laying down or reclining. (*Id.* at 42.) Plaintiff reported she was able to sit for about 45 minutes before she needed to change positions, or stand for twenty minutes before she needed to sit. (*Id.* at 43.)

Plaintiff reported she took pain medication for her fibromyalgia, but the medication caused her to "get sleepy, [and] start to doze off." (Doc. 10-3 at 41.) She said she was sometimes unable to drive a vehicle when on the medication, because she was too sleepy. (*Id.*) Plaintiff stated that when she drove, it was for no more than 10 to 15 minutes at one time. (*Id.* at 39.) In addition, Plaintiff said she had difficulty using her hands for long periods of time due to the fibromyalgia, and could only use them for 10 to 15 minutes before she needed to rest. (*Id.* at 43.) As a result, Plaintiff said she was unable to do "stuff [she] loved to do" such as horseback riding. (*Id.* at 44.)

Susan Moranda, a vocational expert ("VE") testified after Plaintiff, and classified her prior work as follows: fast-food worker, *DOT* 311.472-010, was unskilled and light work; janitor, *DOT* 382.664-010 was semiskilled and medium work; and secretary, *DOT* 201.362-030 was skilled and sedentary work. (Doc. 10-3 at 46-47.) The ALJ then asked the VE to consider a hypothetical individual who was able to do "light work, but should avoid concentrated exposure to fumes, odors, gasses, and so forth." (*Id.* at 47.) The VE believed that the environmental limitations would not erode the light occupational base "as much as the medium" base. (*Id.*) She explained that limitation "would erode production-oriented jobs . . . and that would erode jobs outside and those around food." (*Id.*) As a result, the VE opined that an individual with these limitations would not be able to perform Plaintiff's past work as a fast-food worker or janitor. (*Id.* at 47-48.)

Next, the ALJ asked the VE to consider an individual, based upon the assessment of Dr. Madireddi, who was able to "lift and carry 10 pounds occasionally/five pounds frequently; sit for six

6

hours; stand/walk six hours, but [who] should limit herself to occasional bending." (Doc. 10-3 at 48.) In addition, the individual would be required to "avoid[] concentrated exposure to fumes, odors, gases, etc." (*Id.*) The VE opined Plaintiff would be able to perform secretarial work. (*Id.*) However, with additional limitations to "simple, routine tasks; no production-oriented work; [and] further limited to occasional contact with the public and coworkers." (*Id.*) The VE opined Plaintiff would not be able to perform any of her past relevant work." (*Id.*) The VE explained the limitations essentially rendered a person only capable of "sedentary, unskilled work," which "would eliminate all production work and it would eliminate clerical work and work involving any kind of telemarketing." (*Id.* at 48-49.) As a result, the VE believed no jobs were available in the national economy. (*Id.* at 49.)

On the other hand, if Plaintiff were limited to only light, unskilled work, the VE opined Plaintiff would be able to perform work in the general economy. (Doc. 10-3 at 49-50.) For example, the VE identified the positions of stock check apparel worker, *DOT* 299.667.014, and mail sorter, *DOT* 222.766-010. (*Id.* at 50.) Each of these positions would require Plaintiff "to remain on task" and not need to be "redirected to tasks by a supervisor" daily. (*Id.* at 50-51.)

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of February 1, 2008. (Doc. 10-3 at 19.) Second, the ALJ found Plaintiff's severe impairments included: "chronic pain and chronic obstructive pulmonary disorder." (*Id.*) Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing. (*Id.*) The ALJ determined: "[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but she must avoid concentrated exposure to pulmonary irritants. (*Id.*) With this residual functional capacity, the ALJ found Plaintiff was able to perform past relevant work as a secretary, both as generally performed and actually performed. (*Id.* at 24.) Further, the ALJ determined she was able to perform "jobs that exist in significant numbers in the national economy." (*Id.*) at 22-23. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 25.)

**DISCUSSION AND ANALYSIS**

Plaintiff asserts the ALJ erred in evaluating the credibility of her subjective complaints and

7

1 weighting the medical opinion evidence. (Doc. 13). On the other hand, Defendant contends the ALJ's decision "is supported by substantial evidence and is in accordance with the law." (Doc. 14 at 12).

### A. The ALJ's credibility determination

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ determined "the medical evidence of record documents a history of treatment for [Plaintiff's] medically determinable impairments . . ." (Doc. 10-3 at 21.) Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding her pain.

Factors that may be considered by an ALJ include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and her conduct, and a claimant's daily activities when weighing the claimant's credibility). In this case, the ALJ considered Plaintiff's medical records, stating:

> [T]he medical records document the claimant's subjective and self-serving complaints of generalized pain, depression, and anxiety, but little to no objective evidence to support those allegations. Further, as pointed out by Dr. Madireddi, the use of opiate medication, of which the claimant took large amounts, was not appropriate for asthma or fibromyalgia.

Plaintiff contends these are not clear and convincing reasons to find her testimony is not credible. (Doc. 13 at 7-10.)

///

### 1. Objective medical evidence related to Plaintiff's pain

In this case, the ALJ based his credibility decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. (*See* Doc. 10-3 at 22-23.) For this reason, the ALJ failed to set forth clear and convincing reasons for rejecting the credibility of Plaintiff's subjective complaints, and erred in his evaluation of Plaintiff's subjective complaints.

In 1984, Congress amended the statutes governing disability do address allegations of pain. *See Bunnell*, 947 F.2d at 347; 42 U.S.C. § 423(d)(5)(A). With the amendment, "Congress clearly meant that so long as the pain is associated with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Howard v. Heckler*, 782 F.2d 1484, 1488 n.4 (9th Cir. 1986). The Ninth Circuit observed,

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the degree of pain, as opposed to the mere existence of pain, is unsupported by objective medical findings.

*Fair*, 885 F.2d at 601. Therefore, an ALJ may not base an adverse credibility determination solely upon the medical evidence related to discount claims of pain. *Id.; see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"). Because the ALJ relied only upon the medical record to find Plaintiff's complaints of pain lacked credibility, his credibility determination lacks the support of substantial evidence in the record. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence cannot form the sole basis for discounting pain testimony"); 1996 SSR LEXIS 4, at *2-3 (a claimant's statements "may not be disregarded solely because they are not substantiated by objective medical evidence").

### 2. Use of opiate mediation

The ALJ questions Plaintiff's "use of opiate medication," noting that Dr. Madireddi believed the medication "was not appropriate for asthma or fibromyalgia." (Doc. 10-3 at 23.) Notably, the opiate prescribed by Plaintiff's treating physician Dr. Krishnamoorthi. (*See* Doc. 10-8 at 23, 30, 54.) Although Dr. Madireddi disagreed with Dr. Krishnamoorthi's treatment, there is no explanation for how the use of opiate medication—in compliance with the treatment plan of her physician—

9

undermines Plaintiff's credibility. Indeed, a history of substance abuse, without more, is insufficient to discredit a claimant's testimony. *See Woodsum v. Astrue*, 711 F. Supp. 2d 1239, 1262 (W.D. Wash 2010) ("discounting plaintiff's credibility because of her substance abuse . . . history was improper, given that it bears little relevance to plaintiff's tendency to tell the truth"); *Johnson v. Barnhart*, 312 F. Supp. 2d 415, 429 (W.D.N.Y. 2003) (holding SSR 96-7p, 1996 SSR LEXIS 4 requires more than "history of alcoholism and drug abuse" to discredit the plaintiff's testimony). Thus, the use of prescribed opiate medication is not a clear and convincing reason for rejecting Plaintiff's credibility.

### 3. ALJ's failure to identify the testimony being discounted

Most importantly, as Plaintiff notes, an ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." (Doc. 13 at 8) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "**specifically identify what testimony is credible** and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "**must state which pain testimony is not credible** and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, **by specifically identifying what testimony is not credible** and what evidence undermines the claimant's complaints"). Here, the ALJ failed to identify what portions of Plaintiff's testimony were not credible, and what testimony he rejected based upon the medical record.

The ALJ's failure to specifically discuss and identify what portions of Plaintiff's testimony he found not credible constituted a failure to apply the correct legal standards in evaluating the credibility of Plaintiff's testimony. As a result, the reasons for rejecting Plaintiff's credibility cannot be upheld by the Court. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987) (an ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence).

### B. Remand is appropriate in this action

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to

1  order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*,
2  211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative
3  agency determination, the proper course is to remand to the agency for additional investigation or
4  explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12,
5  16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if her testimony were credited," the testimony can credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834; *Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Based upon the record, remand is appropriate in this matter.

## CONCLUSION AND ORDER

The ALJ failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). As a result, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate on this matter, it declines to address the remaining issues raised by Plaintiff in her opening brief.

11

Accordingly, **IT IS HEREBY ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and

2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Melissa Hopson and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **December 11, 2014**          /s/ Jennifer L. Thurston
                                      UNITED STATES MAGISTRATE JUDGE